**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Wayne Nicolaison,** | **Civil No. 07-3224 (RHK/JJG)** |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Cal Ludeman,** | |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter comes before the undersigned on petitioner Wayne Nicolaison's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1). In addition to the petition itself, Mr. Nicolaison (Nicolaison) brings motions for default judgment (Doc. No. 8), for an evidentiary hearing (Doc. No. 23), and to strike (Doc. No. 29). Respondent Cal Ludeman, a party in his capacity as Commissioner of the Minnesota Department of Human Services (the Commissioner), brings a motion to dismiss (Doc. No. 15). The dispositive matters are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(a).

**I.   BACKGROUND**

Based on a long history of violent sexual conduct, Nicolaison was civilly committed in January 1992 as a psychopathic personality under Minn. Stat. §§ 526.09 and 526.10.[1]  Since

---

[1] These statutes were repealed in 1994 and substantively replaced by Minn. Stat. §§ 253B.02 and 253B.185. The session law expressly stated that the latter statutes be viewed as a continuation of those repealed. *See* 1994 Minn. Laws, 1st Spec. Sess., ch. 1, art. 1 sec. 5.

   Prior to their repeal, the older statutes provided for the civil commitment of psychopathic personalities, defined as persons who lacked judgment or control in sexual matters. *See* Minn. Stat. §§ 526.09, 526.10 (1992). The successor statutes continue to provide for civil commitment of psychopathic personalities, except such persons are now referred to as "sexual psychopathic

then, he has raised a series of legal challenges against his commitment. The most recent effort was a petition for a writ of habeas corpus, under Minn. Stat. § 589.01, that he commenced in a Minnesota district court in January 2006. The district court denied the petition.

Nicolaison appealed to the Minnesota Court of Appeals, which affirmed the district court in an unpublished decision on April 3, 2007. As described by the court, Nicolaison argued that his confinement (1) violated due process because the conditions were unduly harsh and punitive; (2) violated due process because it amounted to preventive detention rather than treatment; and (3) violated double jeopardy and ex post facto laws because it amounted to preventive detention rather than treatment. *Nicolaison v. Ludeman*, No. A06-1969, 2007 WL 969077 (Minn. App. Apr. 3, 2007).

Nicolaison now brings a petition for a writ of habeas corpus under 28 U.S.C. § 2254. In brief, his current arguments may be framed as follows: (1) he was transferred to another facility in violation of due process, equal protection, and ex post facto laws; (2) his civil commitment is punitive, preventive detention in violation of due process; (3) his civil commitment is punitive, preventive detention in violation of double jeopardy; and (4) he has not received treatment like for those determined by statute to be mentally ill and dangerous, in violation of equal protection.

In the papers supporting his petition, Nicolaison raises several other issues. In particular, he challenges the original civil commitment order. But Nicolaison has previously litigated these matters. *See Nicolaison v. Erickson*, 65 F.3d 109, 110-11 (8th Cir. 1995). And the original order

---

personalities." *Compare* Minn. Stat. § 526.09 (1992), *with* Minn. Stat. § 253B.02, subd. 18b (2006). The successor statutes also define a new category, "sexually dangerous persons," who may be committed in the same manner as sexual psychopathic personalities. *See* Minn. Stat. § 253.02, subd. 18c. The chief difference between the old statutory scheme and the new one is that the latter provides a more comprehensive plan for treatment at a secure facility. Minn. Stat. §§ 246B.02; 253B.185, subd. 1. The older statutes' repeal and recodification, however, does not materially influence the analysis here.

2

was not at issue in his most recent appeal. Because Nicolaison has not exhausted his state court remedies, and because he is relitigating issues that were previously decided, they are barred by § 2254(b). The following analysis is accordingly limited to the arguments Nicolaison raises in his petition.

## II. DISCUSSION

### A. Availability of Remedy

Arguing that Nicolaison challenges the conditions of his confinement, rather than the fact or duration of his detention, the Commissioner contends that Nicolaison cannot seek relief under § 2254.

This argument is founded on § 2254(a), which provides that a court shall only entertain such a petition "on the ground that [the petitioner] is *in custody* in violation of the Constitution or the laws or treaties of the United States." (Emphasis added.) Based on this language, a petition may only challenge the fact or duration of detention, not the conditions of confinement. Where a petition raises issues about conditions of confinement, those issues must be dismissed for lack of subject matter jurisdiction. *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); *see also Closs v. Weber*, 238 F.3d 1018, 1023 (8th Cir. 2001) (summarily concluding that claims of improper retaliation were properly excluded from § 2254 petition).

Two of the four arguments raised by Nicolaison involve conditions of confinement rather than the fact or duration of confinement. In his first argument, Nicolaison contends that officials improperly moved him to another facility. Even if Nicolaison prevailed on this argument, it does not alter the fact or duration of his detention. So Nicolaison cannot advance this argument under § 2254 and it is accordingly dismissed.

Through his fourth argument, Nicolaison claims that he should have the same rights and privileges as others detained, by statute, as mentally ill and dangerous. Some of these rights and privileges may affect the conditions of confinement, but others may go to the fact or duration of detention. For the purposes of the ensuing analysis, this Court will assume the fourth argument survives, but only to the extent it implicates the fact or duration of Nicolaison's detention.

B.     **Standard of Review**

Before turning to the Commissioner's remaining arguments, it is necessary to establish the standard of review. When determining whether a petitioner is entitled to relief, a court looks to § 2254(d), which provides in relevant part,[2]

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in a State court proceedings unless the adjudication of the claim—
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]

In accordance with this standard, a federal court exercises limited and deferential review of the underlying state court decision. *Greer v. Minnesota*, 498 F.3d 952, 956 (8th Cir. 2007).

A state court decision is contrary to clearly established federal law where the state court reaches a conclusion opposite that of the U.S. Supreme Court on a question of law, or reaches an opposite result on facts that are materially indistinguishable from U.S. Supreme Court precedent. A state court decision is an unreasonable application of clearly established federal law where the

---

[2] The remainder of this paragraph, § 2254(b)(2), provides for relief where a state court makes a decision "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In his petition, Nicolaison does not challenge any of the state courts' findings. Even if such a challenge may be inferred, there are no material issues of fact that impair an informed analysis of his petition here.

state court correctly identifies the controlling law but does not reasonably apply it. *Linehan v. Milczark*, 315 F.3d 920, 924 (8th Cir. 2003).

This standard does not require the state court decision to be free of error. If the rationale of the state court is in error, but its decision can otherwise be reconciled with clearly established federal law, then the decision of the state court is properly upheld. *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001).

The standard of review also requires a federal court to decide what is "clearly established federal law." As the ensuing analysis will show, this question is important to this case. Clearly established federal law is sometimes described as the governing legal principles, as set out by the U.S. Supreme Court, at the time the state court made its decision. *See Guinn v. Kenma*, 489 F.3d 351, 353 (8th Cir. 2007).

In *Williams v. Taylor*, the U.S. Supreme Court attempted to clarify the standard. Writing for a plurality, Justice Sandra Day O'Connor stated that clearly established federal law refers to "the holdings, as opposed to the dicta, of this Court's decisions." 529 U.S. 362, 412 (2000). The Eighth Circuit, in ensuing decisions, often recited this language. *See, e.g., Poole v. Goodno*, 335 F.3d 705, 707 (8th Cir. 2003).

The precise meaning of this language, however, was a serious point of contention when the U.S. Supreme Court revisited it in *Carey v. Musladin*. 127 S.Ct. 649 (2006). The majority opinion took a relatively narrow view of clearly established federal law, holding that if the Court had no prior holdings on point, there is no standard and thus no clearly established federal law. *Id.* at 654.

But two Justices, who only concurred in the judgment, criticized the result. Justice Souter proposed that, if a general underlying principle is clear, it is possible to determine whether a state

5

court decision is contrary or unreasonable. *Id.* at 657-58. Justice Stevens suggested that even though a particular holding is unclear, the underlying standard may not be, and so the standard still provides clearly established federal law. *Id.* at 655.

For some of the areas of the law at issue in this matter, there are instances where the U.S. Supreme Court has provided some guiding principles, but not necessarily a holding that supplies a result. Where there is sufficient guidance to determine that the state court decision is contrary or unreasonable, this Court will do so. *See id.* at 657-58 (Souter, J., concurring in the judgment).

This approach is entirely pragmatic. Although the majority opinion in *Carey* sets out a more stringent standard, there is no simple way to distinguish between an "on-point" holding and a more general principle. In the interests of complete analysis, this Court will consider the case law it deems most likely to be controlling. But this Court will also acknowledge circumstances where this law might be too remote to be deemed "clearly established federal law" under the majority opinion in *Carey*.

### C. Double Jeopardy

As the first argument is already decided, analysis might ordinarily turn to Nicolaison's second argument. But some of the analysis for that argument is derived from his third argument, whether his civil commitment violates double jeopardy. For this reason, it appropriate to reach the third argument before the second.

Constitutional protections against double jeopardy attach in criminal prosecutions, but not civil proceedings. As the parties have correctly indicated, the question of whether a person is detained for criminal or civil reasons depends on whether the detention is punitive. Nicolaison argues that his detention is punitive, and so it violates double jeopardy; the Commissioner says it does not.

Two decisions by the U.S. Supreme Court definitively answer this question.  In *Kansas v. Hendricks*, the Court ruled that when deciding whether a civil commitment is actually a punitive detention, the analysis hinges on statutory construction.  Where the civil commitment statutes are so punitive in purpose and effect that the commitment procedure is civil in name only, there is punitive detention.  521 U.S. 346, 361 (1997).

The *Hendricks* Court supplied several nonexclusive factors for evaluating this question.  These include whether civil commitment statutes involve objectives of criminal punishment such as retribution and deterrence; whether they are motivated by public safety and prevention of future harm, rather than punishment for past conduct; or whether a finding of criminal intent is required.  *Id.* at 361-62.

In addition to these considerations, the Court noted that many restraints associated with civil commitment statutes are not necessarily punitive.  For instance, civil commitment statutes may permit indefinite detention.  And such statutes do not necessarily need to provide access to treatment, whether or not those committed are amenable to treatment. *Id.* at 363, 366.

The Court revisited the principles of *Hendricks* in *Seling v. Young*.  The issue in this case was, in a double jeopardy challenge, whether civil commitment statutes may be challenged "as applied."  The petitioner argued that, even if the statutory scheme was not punitive, state officials executed civil commitment statutes in such a manner that his commitment amounted to punitive detention.  531 U.S. 250 (2001).

The *Seling* Court held that the statutory language, in the civil commitment statutes, is the only basis for determining whether there is punitive detention.  Consistent with this reasoning, it rejected the "as applied" approach, stating that implementation of civil commitment statutes is immaterial to whether such commitment is punitive detention.  In a double jeopardy challenge,

7

therefore, punitive detention cannot be demonstrated by substandard conditions of confinement. *Id.* at 262-63.

The analysis here, therefore, turns on the civil commitment statutes that were applied to Nicolaison. Minn. Stat. § 526.09 (1990) defines a "psychopathic personality" as

> any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons.

Minn. Stat. § 526.10 (1990) adds that, where a person is found to be a psychopathic personality, the person shall be committed to a public or private hospital; but if treatment at a hospital is unsuccessful or the person poses danger to hospital staff or the public, the person may be moved to a more secure facility.

It is plain, from the language of these statutes, that the key concern is keeping the public safe from persons who cannot control their sexual behavior. Although the statutes contemplate some level of treatment, they do not mandate treatment, and they recognize circumstances where concern about safety may require more secure detention. Commitment also does not require any finding of criminal intent; to the contrary, the statutes define psychopathic personalities as those who cannot control or appreciate their misconduct and are "irresponsible."

The psychopathic personality statutes, therefore, do not have a punitive purpose or effect. Commitment under the statutes is civil, not criminal, and so protections against double jeopardy do not attach.

When the Minnesota Court of Appeals rejected Nicolaison's double jeopardy argument, it relied on the Minnesota Supreme Court decision of in *Call v. Gomez*. 535 N.W.2d 312 (Minn.

8

1995).  The *Call* court summarily ruled that, because the psychopathic personality statutes are remedial rather punitive, double jeopardy does not apply.

Because the Minnesota Court of Appeals relied on *Call*, rather than more recent decisions from the U.S. Supreme Court, it arguably overlooked clearly established federal law.  This error has no significance, however, because the outcome in *Call* is wholly consistent with the outcome under controlling U.S. Supreme Court precedents.  As the state court judgment is not contrary to clearly established federal law, Nicolaison's double jeopardy argument affords him no relief.

Nicolaison counters that, because he may be indefinitely detained and because he has no access to treatment, his commitment amounts to punitive detention.  But as *Hendricks* indicates, these concerns are not enough to transform civil commitment into punitive detention.  Nicolaison also contends his treatment program as inadequate.  These issues go to how the civil commitment statutes are executed, which under *Seling*, are not appropriately considered in a double jeopardy analysis.  In summary, Nicolaison's does not raise any concerns that alter the outcome here.

### D.     Due Process

The analysis now returns to Nicolaison's second argument.  As with his double jeopardy arguments, Nicolaison asserts that his detention is punitive, except this time he contends that it violates due process.  As noted beforehand, any procedural or substantive due process challenges to his original civil commitment order will not be considered here.  *Cf. Nicolaison v. Erickson*, 65 F.3d 109, 110-11 (8th Cir. 1995).

With this limitation, Nicolaison's argument may be framed in two different ways.  In his supporting papers, he implicates both.  One is whether the civil commitment is punitive "on its face."  The analysis here is whether the civil commitment statutes are so arbitrary that, in effect, their enforcement violates substantive due process.  The other is whether the civil commitment

scheme is punitive "as applied." The issue here is whether conditions of confinement are such that it amounts to improper punitive detention in violation of substantive due process. In this context, the underlying question is whether the Commissioner has provided treatment consistent with the purposes of civil commitment.

One threshold matter merits further comment. The Commissioner contends that, because Nicolaison does not assert a liberty interest, the protections of due process do not attach. Though no authorities directly recognize the liberty interests of a civilly committed sexual predator, it is otherwise well established that a person civilly committed—for whatever reason—has a personal interest in his or her liberty. *Compare Senty-Haugen v. Goodno*, 462 F.3d 876, 886-87 (8th Cir. 2006), *with Youngberg v. Romeo*, 457 U.S. 307, 315 (1982), *and United States v. Salerno*, 481 U.S. 739, 746 (1987).

### 1.     Facial Challenge

On whether civil commitment of sexual predators violates substantive due process on its face, clear indication may be taken from the *Hendricks* decision, discussed earlier. 521 U.S. 346 (1997). In addition to the double jeopardy issue, the *Hendricks* Court considered whether it was a violation of substantive due process for a civil commitment statute to provide for detention of sexual predators. *See id.* at 356-57.

The Court observed that, for a statutory civil commitment scheme to satisfy due process, the criteria for commitment must include that a person is dangerous and that the person has some sort of mental illness or mental defect. It then concluded that, if a statutory scheme provides for the commitment of those who cannot control their sexual behavior, the criteria of dangerousness and mental illness are both met. *Id.* at 359-60.

Minnesota's psychopathic personality statutes provide for the civil commitment of those who, because of emotional instability or comparable mental defects, cannot control their sexual behavior and so pose a threat to others. *See* Minn. Stat. § 526.09 (1990). These elements plainly satisfy the criteria in *Hendricks*, and for that matter, the Kansas statutes in *Hendricks* are much like the Minnesota statutes here. 521 U.S. at 352, 360. Minnesota's psychopathic personality statutes, therefore, satisfy substantive due process on its face.

In its decision, the Minnesota Court of Appeals recognized that Nicolaison had raised two distinguishable due process arguments. Though the court did not expressly frame the arguments as "facial" and "as applied," it addressed some of its analysis to the statutory scheme itself and another part to the conditions of confinement. *See Nicolaison v. Ludeman*, 2007 WL 969077 at *2-*3.

On the question of the statutory scheme, the court summarily relied on the decision of the Minnesota Supreme Court in *In re Blodgett*. 510 N.W.2d 910 (Minn. 1994). That decision, after carefully considering the psychopathic personality statutes, held that those statutes do not violate due process. The *Blodgett* court did not frame this analysis by reference to decisions of the U.S. Supreme Court, as it lacked guidance from *Hendricks*.[3] *See id.* at 914-16.

---

[3] As the *Blodgett* court acknowledged, 510 N.W.2d at 914, the litigation was motivated by the then-recent decision of the U.S. Supreme Court in *Foucha v. Louisiana*, 504 U.S. 71 (1992). *Foucha* involved a criminal defendant who was found not guilty by reason of insanity. Pursuant to state law, he was hospitalized indefinitely. The defendant subsequently asserted he was no longer mentally ill and demanded his release. Because his commitment was founded on insanity and not dangerousness alone, a plurality of the Court concluded that his continued commitment was a violation of due process. 504 U.S. at 79-81, 85-86.

Perhaps as a response to *Foucha*, the *Blodgett* court emphasized that the psychopathic personality statutes provide not only for treatment, but also "periodic review" of the status of those committed. 510 N.W.2d at 916 (citing Minn. Stat. §§ 253B.18 and 526.10). But the analysis of the *Blodgett* court was not driven by, and it also took care to distinguish, the *Foucha* decision. So *Foucha* does not materially affect the analysis here.

11

Though the analysis by the *Blodgett* court differs somewhat from that in *Hendricks*, both cases focused on comparable elements of dangerousness and mental illness. And both concluded that a statutory scheme may provide for the civil commitment of sexual predators. This analysis is consistent with clearly established federal law. So to the extent Nicolaison argues substantive due process on its face, he is not entitled to relief.

### 2. As Applied Challenge

As the U.S. Supreme Court has observed, it has yet to decide whether a civil commitment scheme for sexual predators, as applied, violates substantive due process. *Seling v. Young*, 531 U.S. 250, 266 (2001). This unequivocal statement supplies ample reason to conclude there is no clearly established federal law here. But in the interest of more complete analysis, this concern may be set aside for the moment.

The underlying argument here does not challenge the psychopathic personality statutes, but how they are applied. Nicolaison contends his treatment is so inadequate, and so inconsistent with the statutory civil commitment scheme, that it amounts to punitive detention in violation of substantive due process.

One problem here is that the arguments about treatment may be deemed challenges to the conditions of confinement. As noted beforehand, Nicolaison cannot do this in a petition under § 2254. *See Kruger*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). Nor is it evident, if he were to prevail and show that he is subject to punitive detention, that the remedy is release from custody.

With these caveats, the question then becomes whether substantive due process requires a civilly committed sexual predator to receive treatment, based on the idea that this treatment will make rehabilitation and release possible. As a general rule, the conditions of confinement for

those civilly committed must be reasonably related to, and not excessive in light of, the purpose of the commitment. *See Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979) (examining the conditions of confinement for criminal defendants in pretrial detention).

The nearest U.S. Supreme Court precedent with any potential application to the civil commitment of sexual predators is the decision in *Youngberg v. Romeo*. 457 U.S. 307 (1982). This case involved a developmentally disabled person. This disability was so profound that the person was prone to unexpected violence and had no meaningful ability to care for himself. *Id.* at 309-10. Although the Court recognized this person had a due process interest in freedom from commitment, the parties agreed that due to the severity of the disability, release was impossible.[4] *See id.* at 315, 317.

The issue, therefore, was not whether due process required treatment in contemplation of release. It was whether it required treatment as a means to reduce the restraints required by the ongoing detention. The Court held that "minimally adequate" training was required. It then set out a highly deferential standard, ruling that the only question is whether the training was based on professional judgment. *Id.* at 321-23.

For several reasons, the *Youngberg* decision is not helpful in answering the question of whether civilly committed sexual predators have a due process right to treatment. One concern is that *Youngberg* involved a developmentally disabled person with no possibility of release. It is far from evident that a sexual predator, who is primarily interested in release, may be handled in

---

[4] Because the Court described this due process interest as "freedom from restraint," some Eighth Circuit authorities have suggested a narrow view, interpreting it as the right to be free from personal physical restraints such as straps. This implication evidently arises from the fact that *Youngberg* involved an uncontrollably violent person with no likelihood of release. *See Buckley v. Rogerson*, 133 F.3d 1125, 1129 (8th Cir. 1998); *Heidemann v. Rother*, 84 F.3d 1021, 1029 (8th Cir. 1996). But the Court itself appears to take a broader view, citing its own precedents on the right to be free from detention altogether. *See Youngberg*, 457 U.S. at 315 (citing *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 9-10 (1979)).

the same way. Another difference is the case only recognized a right to "minimally adequate" treatment that reduces the need for restraints inherent to detention. It did not consider whether there was a comparable right to treatment that facilitates release.

Because of the narrow application of the right to treatment recognized in *Youngberg*, the Eighth Circuit also expressly rejected the notion that sexual predators have any comparable due process right to treatment. *See Bailey v. Gardebring*, 940 F.2d 1150, 1153 (8th Cir. 1991).

To review the preceding analysis, the U.S. Supreme Court has yet to consider whether a civil commitment scheme for sexual predators, as applied, violates substantive due process. And the nearest decision on civil commitments, *Youngberg*, does not supply the sort of due process right to treatment that Nicolaison urges here.

This Court concludes that no clearly established federal law applies in this area, and as a result, Nicolaison cannot obtain relief. *Cf. Carey v. Musladin*, 127 S.Ct. 649, 654 (2006). This outcome also means that it is not necessary, or for that matter possible, to determine whether the decision of the Minnesota Court of Appeals comports with clearly established federal law. Even so, its decision does not contradict the preceding analysis.

### E.     Equal Protection

Nicolaison has one remaining argument. He contends that, as a psychopathic personality, he receives different rights and privileges than those committed as mentally ill and dangerous, and so his commitment violates constitutional principles of equal protection.

As the Commissioner correctly notes, Nicolaison did not bring this issue to the attention of the Minnesota Court of Appeals. Its decision does not mention equal protection whatsoever. Under § 2254(b), a petitioner must exhaust remedies in state courts before asserting an argument in a petition for a writ of habeas corpus. Because Nicolaison did not exhaust his equal protection

argument or supply good cause for his failure to do so, this argument also fails. *See Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007).

      **F.**      **Residuary Concerns**

There are some other procedural issues in this matter that require comment. Because the Commissioner did not timely file a response to the petition, Nicolaison filed a motion for default judgment. By an order on September 17, 2007, this Court granted the Commissioner additional time in which to file, noting that judgment on the merits is preferable to default. *See In re Jones Truck Lines*, 63 F.3d 685, 688 (8th Cir. 1995). Consistent with that reasoning, this Court deems it appropriate to recommend that Nicolaison's motion for default judgment be denied.

Nicolaison also moves for an evidentiary hearing. As the prior analysis demonstrates, an evidentiary hearing is not needed to resolve the issues Nicolaison presents in his petition. So this motion is appropriately denied. And Nicolaison also moves to strike, because the Commissioner purportedly filed a responsive memorandum on October 15, 2007 in violation of applicable rules. As nothing in the Commissioner's memorandum affects the analysis in this report, Nicolaison's motion to strike is appropriately denied as moot.

**III.**      **CONCLUSION**

To the extent that Nicolaison challenges his conditions of confinement, he cannot obtain relief under § 2254. His civil commitment under the psychopathic personality statutes does not constitute punitive detention, and therefore, the statutes do not violate double jeopardy or facially violate substantive due process. To the extent Nicolaison argues the psychopathic personality statutes violate substantive due process as applied, due to a failure to provide treatment, no due process right to such treatment is provided under clearly established federal law and so this argument also fails. Nicolaison also has not exhausted his equal protection argument. Because

Nicolaison has no meritorious arguments, his petition for a writ of habeas corpus under § 2254 is appropriately denied.

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Nicolaison's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED.**

2. Nicolaison's motion for default judgment (Doc. No. 8) be **DENIED.**

3. The Commissioner's motion to dismiss (Doc. No. 15) be **GRANTED.**

4. Nicolaison's motion for an evidentiary hearing (Doc. No. 23) be **DENIED.**

5. Nicolaison's motion to strike (Doc. No. 29) be **DENIED AS MOOT.**

6. This litigation be dismissed in its entirety and judgment entered.

Dated this 14th day of January, 2008.

                           s/ *Jeanne J. Graham*
                           JEANNE J. GRAHAM
                           United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **January 28, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.